UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

| | |
|---|---|
| JEREMIAH PEACEMAKER,<br>Plaintiff,<br><br>vs.<br><br>**TIMOTHY TOOMEY**, Former Assistant Chief of Police and Current Chief of Police,<br>**LEE MCPEEK**, Former Chief of Police, Watertown Police Department,<br>**TERRY INGALLS**, Former Detective, Watertown Police Department,<br>**CODY TRUMM**, Detective, Watertown Police Department,<br>**RUEBEN KINNUNEN**, Detective, Watertown Police Department,<br>**CHAD STAHL**, Former Detective, Watertown Police Department,<br>**SHANE HARDIE**, Former Officer, Watertown Police Department and Currently Working for the Division of Criminal Investigations.<br>**BRANDON JOHNSON**, Officer, Watertown Police Department,<br>**RYAN FISCHER**, Former Officer, Watertown Police Department,<br>**AMON HARBERTS**, Officer, Watertown Police Department,<br>**TREVOR BARTHEL**, Officer, Watertown Police Department,<br>**CADEN WOLLSCHLAGER**, Officer, Watertown Police Department,<br>**RYAN BEAUCHAMP**, Officer, Watertown Police Department,<br>**SCOTT PRICE**, Officer, Watertown Police Department<br>**UNKNOWN SUPERVISOR** any Current or Former named Watertown Police Officer, | 1:26-CV-01002-CBK<br><br>MEMORANDUM OPINION<br>AND ORDER |

| | |
|---|---|
| **CAMERON COREY**, Former Agent of the South Dakota Division of Criminal Investigation,<br>**NATHAN WINTER**, Agent of the South Dakota Division of Criminal Investigation,<br>**DARIN SINNER**, Agent of the South Dakota Division of Criminal Investigation,<br>**JEFFREY BELLON**, Agent of the South Dakota Division of Criminal Investigation,<br>**JEFFREY KOLLARS**, Agent of the South Dakota Division of Criminal Investigation,<br>**JASON EVEN**, Agent of the South Dakota Division of Criminal Investigation,<br>**SCOT HAWKS**, Agent of the South Dakota Division of Criminal Investigation,<br>**DANIEL A. SATTERLEE**, Director of the Division of Criminal Investigation,<br>**MARTY JACKLEY**, Attorney General, as Supervisor of the Division of Criminal Investigation and South Dakota Forensic Lab,<br>**JASON RAVNSBORG**, Supervisor of the Division of Criminal Investigation and South Dakota Forensic Lab,<br>**MARK VARGO**, Supervisor of the Division of Criminal Investigation and South Dakota Forensic Lab,<br>**HEATHER SPECHT**, Former Forensic Scientist, South Dakota Forensic Lab,<br>**JESSIKA KIRKPATRICK**, Former Forensic Scientist, South Dakota Forensic Lab, **KRISTINA FRYER**, Director, South Dakota Forensic Lab,<br>**CITY OF WATERTOWN,**<br>**CODINGTON COUNTY**,<br>All in Their Official and Individual Capacities,<br><br>Defendants. | |

## INTRODUCTION

Plaintiff filed a complaint under 42 U.S.C. § 1983 arising out of the three and one half year investigation and prosecution of the plaintiff for murder in South Dakota Circuit Court, Third Judicial Circuit, Codington County, case # 14CRI20-001137. I take judicial notice of the records of the South Dakota Unified Judicial System accessible on the eCourts portal, https://ecourts.sd.gov. Victim K.O. was found dead in her apartment on September 2, 2020. She had been stabbed 16 times and was decapitated. Plaintiff was arrested on September 3, 2020, and detained on a probable cause finding. An indictment was filed September 14, 2020, in South Dakota Circuit Court, Third Judicial Circuit, Codington County, on September 14, 2020, charging plaintiff with second degree murder in the death of K.O. Bond was set at $1 billion and defendant remained detained. A subsequent indictment charged plaintiff with first degree murder. On March 5, 2024, plaintiff was acquitted following a jury trial.

Plaintiff alleges that defendant law enforcement personnel from the Watertown, South Dakota, Police Department ("WPD"), the South Dakota Division of Criminal Investigation ("DCI"), and forensic scientists employed by the South Dakota Forensic Laboratory ("forensic scientists") violated his Fourth, Eighth, and Fourteenth Amendment rights in relation to his arrest without probable cause and providing false, fraudulent, and misleading evidence in the procurement of indictments. Plaintiff also claims Fourteenth Amendment violations arising out of the "use of unreliable and fraudulent investigative techniques, procurement of unreliable and fabricated evidence and spoilation of evidence," suppression of exculpatory evidence, and fabrication of false or misleading evidence. Plaintiff claims defendants Codington County and the City of Watertown violated plaintiff's Fourth, Fifth, Eighth, and Fourteenth Amendment rights arising out of unconstitutional policy, practices, and customs. Plaintiff claims supervisory liability against supervisory defendants for violation of plaintiff's Fourteen Amendment rights. Finally, plaintiff claims defendants engaged in a conspiracy to violate plaintiff's Fourth, Fifth, Eighth, and Fourteenth Amendment rights.

Defendants Jackley and Vargo filed a motion to dismiss alleging failure to state a claim and absolute immunity, Doc. 29. Certain Watertown Police Department ("WPD") defendants filed a motion to dismiss alleging failure to state a claim, Doc. 31. The defendants employed by the State of South Dakota filed a motion to dismiss official capacity claims against said defendants, Doc. 33. Other WPD defendants, the City of Watertown, and the unnamed WPD supervisors filed a motion to dismiss alleging failure to state a claim, Doc. 34. The defendants employed by the South Dakota Division of Criminal Investigation (the "DCI defendants") filed a motion to dismiss the malicious prosecution claim alleging qualified immunity, the Eighth Amendment claims for failure to state a claim, the Fourteenth Amendment claims for deliberate suppression of exculpatory evidence, alleging failures to state a claim against these defendants, seeking also to dismiss all claims against DCI defendants Satterlee, Hawks, Even, Kollars, Bellon, and unknown supervisors, alleging failure to state a claim, Doc. 37. Defendant Codington County filed a motion to dismiss alleging failure to state a claim, Doc. 39. Defendant Ravnsborg filed a motion to dismiss any individual capacity claim against him, alleging absolute immunity, Doc. 41. Defendants Specht, Kirkpatrick, and Fryer (the "forensic scientist defendants") filed a motion to dismiss, alleging failure to state a claim, absolute immunity for witness testimony in a criminal proceeding, and qualified immunity as to malicious prosecution and suppression of exculpatory evidence claims, Doc. 43.

Plaintiff filed a notice that defendant Codington County was inadvertently left out of the caption of the complaint but was named in the body of the complaint. Plaintiff filed a motion to add Codington County to the caption of the complaint, Doc. 69. The Clerk of Courts routinely enters in the docket sheet all defendants set forth in the complaint as defendants. Codington County has been a named defendant in this case from its inception, notwithstanding no recitation of the name in the caption.

## DECISION

### I. Claims Against Attorneys General.

### A. Prosecutorial Immunity.

Plaintiff alleges that defendants Jackley, Vargo, and Ravensborg were attorneys general during time frame alleged in the indictment and that, during their individual tenures as the South Dakota Attorney General they had supervisory authority over of the Department of Criminal Investigation ("DCI") and its agents and the South Dakota Forensic Laboratory and its scientists. Defendants Jackley, Vargo, and Ravensborg contend they are absolutely immune from liability as the Attorneys General.

The murder for which plaintiff was charged and tried occurred in August 2020. Following a ten day trial, plaintiff was acquitted of all charges in March 2024. I take judicial notice of the dates of service of the Attorneys General defendants. Defendant Ravnsborg was attorney general from January 5, 2019, to June 21, 2022, although he was suspended on April 12, 2022. He was in office during the time the murder was being investigated. Defendant Vargo was the South Dakota Attorney General from June 28, 2022, to January 3, 2023. Defendant Jackley's appointment occurred on January 7, 2023. Defendant Jackley tried the murder case against plaintiff in 2024.

The United States Supreme Court long ago established that a prosecutor is absolutely immune from a suit for damages under 42 U.S.C. § 1983. Imbler v. Pachtman, 424 U.S. 409, 427, 96 S. Ct. 984, 993, 47 L. Ed. 2d 128 (1976). The Court in Imbler v. Pachtman delineated the boundaries of prosecutorial absolute immunity, holding that a prosecutor is immune from a civil suit for damages under 42 U.S.C. § 1983 "in initiating a prosecution and in presenting the State's case," which the Supreme Court characterized as an "integral part of the judicial process." Imbler v. Pachtman, 424 U.S. at 430-31, 96 S. Ct.at 995. The Supreme Court held, however, that "[w]e have no occasion to consider whether like or similar reasons require immunity for those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of advocate." *Id.*

> We recognize that the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom. A prosecuting attorney is required constantly, in the course of his duty as such, to make decisions on a wide variety of sensitive issues. These include questions of whether to present a case to a grand jury, whether to file an information, whether and when to prosecute, whether to dismiss an indictment against particular defendants, which witnesses to call, and what other evidence to present. Preparation, both for the initiation of the criminal process and for a trial, may require the obtaining, reviewing, and evaluating of evidence. At some point, and with respect to some decisions, the prosecutor no doubt functions as an administrator rather than as an officer of the court. Drawing a proper line between these functions may present difficult questions, but this case does not require us to anticipate them.

Imbler v. Pachtman, 424 U.S. at 431 n. 33, 96 S. Ct. at 996 n. 33. "A prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." Buckley v. Fitzsimmons, 509 U.S. 259, 273, 113 S. Ct. 2606, 2615, 125 L. Ed. 2d 209 (1993).

Plaintiff has not alleged that the attorneys general defendants actually investigated the murder allegations and has not raised claims against them in their role as an advocate. Instead, plaintiff alleges that the defendants were the supervisors of the DCI and the forensic laboratory employees who investigated, or failed to investigate, the murder and prepared reports. These defendants are not entitled to absolute immunity as to Plaintiff's claims.

**B. Supervisory Liability.**

The attorneys general defendants contend that plaintiff's supervisory liability claims are not cognizable under 42 U.S.C. § 1983 and fail to state a claim upon which relief may be granted. "A supervisor may not be held liable under § 1983 for the constitutional violations of a subordinate on a respondeat superior theory. But a supervisor may be held liable if a failure to properly supervise and train an offending employee caused a deprivation of constitutional rights." Troupe v. Young, 143 F.4th 955, 972 (8th Cir. 2025) (internal quotations and citations omitted) (cleaned up).

Plaintiff does not name any of the Attorneys General defendants in Counts One through Four of the complaint. In Count One, the South Dakota DCI is alleged to have engaged in malicious prosecution in violation of the Fourteenth Amendment, including allegations that DCI Agent Specht created a lab report containing a false statement and fabricated evidence which were used to obtain an indictment against plaintiff and were used at trial. Count One alleges, *inter alia*, that the DCI's role in the investigation and presentation of such evidence was the result of an improper purpose, unjustifiable motive, hostility or ill will, and malice against plaintiff, aimed to deprive plaintiff of his constitutional rights. In Count Two, the DCI's above claimed actions are alleged to have violated plaintiff's substantive due process and liberty rights. Count Three alleges that defendants, including the DCI, deliberately withheld and suppressed evidence in conjunction with a photo lineup of suspects, including plaintiff, and statements made by a person who knew the victim. In Count Four, plaintiff alleges that the above actions in the fabrication of false and misleading lab reports were used against plaintiff to obtain an indictment and at trial. Plaintiff alleges defendants deliberately and intentionally suppressed the false nature of the evidence with reckless indifference to plaintiff's constitutional right to Due Process. Count Five of the complaint does not allege any claim against the DCI or forensic scientist defendants.

Count Six of the complaint claims that "all Defendants supervisors, specifically unknown at this juncture, are liable for violation of the plaintiff's constitutional rights set forth above. "Supervisory defendants" would include the Attorneys General defendants but defendants contend that Count Six only applies to unknown supervisory defendants, not the named Attorneys General defendants. Count Six alleges (without reference to "unknown" supervisors) that "supervisory defendants personally participated in the violation of the plaintiff's constitutional rights, have a history of wide spread abuse of constitutional rights, intentionally implemented official policies or customs that resulted in their subordinates acting with deliberate indifference to plaintiff's constitutional rights; or directed subordinate Defendants to take the actions that resulted in the violation of plaintiff's constitutional rights; or knew that subordinate defendants would take action in

violation of plaintiff's constitutional rights." Finally, plaintiff alleges in Count Seven that all defendants engaged in a conspiracy to violate plaintiff's constitutional right to be free from unreasonable arrest, seizure, wrongful imprisonment, and malicious prosecution.

The Eighth Circuit has articulated the extent of supervisory liability:

> A supervisor may be liable under § 1983 if his failure to properly supervise and train the offending employee caused the constitutional violation at issue. A failure-to-supervise claim faces a rigorous standard that the superior (1) had notice of a pattern of conduct by the subordinate that violated a clearly established constitutional right; (2) was deliberately indifferent to or authorized such violations; (3) failed to take remedial action; and (4) that failure caused the [plaintiff's] injury. The supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. Even if the supervisors are not involved in the day-to-day operations that led to the incident at issue, personal involvement may be found if the supervisors were involved in creating, applying, or interpreting a policy that gives rise to unconstitutional conditions.

Arnett v. Norris, 160 F.4th 921, 929–30 (8th Cir. 2025) (internal quotations and citations omitted).

Plaintiff has sufficiently alleged that the Attorneys General defendants were supervisors of the DCI and the forensic scientists and that supervisory defendants engaged in conduct complying with Arnett v. Norris. At a minimum, plaintiff has alleged that supervisory defendants implemented policies or customs giving rise to constitutional violations. Plaintiff has stated claims against the Attorneys General defendants that survive defendants' motions to dismiss.

## II. Claims Against Watertown Police Officers.

### A. Failure to State a Claim.

Defendants McPeek, Johnson, Barthel, Price, Beauchamp, and Wollschlager contend that the complaint fails to state how each of those defendants personally participated in any misconduct. Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must be dismissed if it fails to state a claim upon which relief can be granted. To survive dismissal, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." Ashcroft v. Iqbal,

556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (*quoting* Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)). A claim achieves facial plausibility only when the pleaded facts allow the court to draw a reasonable inference that the defendant is liable, meaning success on the merits is more than a sheer possibility. Braden v. Wal-Mart Stores, Inc, 588 F.3d 585, 594 (8th Cir. 2009). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting plaintiff's claims]." Bell Atl. Corp. v. Twombly, 550 U.S. at 556, 127 S. Ct. at 1965. "Specific facts are not necessary; a plaintiff need only allege sufficient facts to provide fair notice of the claim and its basis." Delker v. MasterCard Int'l, Inc., 21 F.4th 1019, 1024 (8th Cir. 2022) (*quoting* Erickson v. Pardus, 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (cleaned up).

The complaint alleges that defendant McPeek was a law enforcement officer who served as Chief of Police and Assistant Chief during all relevant times. McPeek is alleged to have had executive and supervisory authority for the acts of the WPD defendants. As set forth above as to the Attorneys General defendants, the complaint adequately alleges claims against supervisory defendants.

The Complaint alleges that defendants Johnson, Barthel, Price, Beauchamp, and Wollschlager were law enforcement officers with the WPD. The complaint alleges that defendant Beauchamp was one of the defendants who secured the scene of the murder. The complaint alleges that defendant Wollschlager investigated the plaintiff prior to the discovery of the murder by taking photos of the plaintiff after he reported that he had been hit by a car. Plaintiff contends that taking photos was the extent of the investigation into the hit and run perpetrated upon plaintiff. That is the extent of specific allegations as to each of these named defendants.

The complaint alleges that WPD defendants were the first law enforcement officers on the scene to investigate the murder. The complaint alleges that the WPD defendants failed to interview or document witnesses who appeared on the scene who indicated they had information about the possible date of death. Plaintiff contends that

the information those witnesses offered to provide was critical to plaintiff proving his innocence because he had an alibi for the time period during which it was ultimately determined that the victim had died. The complaint alleges that the WPD defendants secured the scene but failed to collect evidence from the backyard or the roof which were depicted in crime scene photographs. The complaint alleges that there was no perimeter search conducted. The complaint alleges that there was a tent or hammock in the backyard where somebody was possibly living but that no evidence was collected or investigation made of that fact. The complaint alleges that the WPD defendants failed to interview other tenants in the building or search their apartments for evidence. The complaint alleges that, following finding the victim, plaintiff's claimed assault and hit and run was investigated and found to be true but was disregarded in determining whether to arrest the plaintiff for the murder. The complaint alleges that a saw was seen on the roof in WPD photographs but was not collected until much later, when any DNA or fingerprint evidence had eroded. The complaint goes on to describe various other information which was not investigated and which would have been exculpatory.

Plaintiff incorporated all the foregoing in the substantive counts of the complaint. In the substantive counts, plaintiff alleges that, *inter alia*, the WPD defendants deliberately arrested plaintiff without probable cause, that the lack of investigation was a result of improper purpose, hostility or ill will and malice against the plaintiff aimed at depriving him of his constitutional rights, that they conducted an inadequate and reckless investigation which deprived plaintiff of his substantive due process rights and his liberty interests, deprived plaintiff of exculpatory evidence, fabricated false and misleading evidence, and all the foregoing was part of a conspiracy to deprive plaintiff of his constitutional rights.

The complaint against Johnson, Barthel, Price, Beauchamp, and Wollschlager adequately states claims upon which relief could be granted. If these named defendants did not in fact participate in the denial of plaintiff's rights, such defense is better raised in an answer and upon summary judgment following discovery.

The WPD defendants contend that Count One of the complaint fails to state a malicious prosecution claim against them. Count One alleges that plaintiff was arrested without probable cause in violation of plaintiff's constitutional rights, that the grand jury's indictments were based upon fabricated, fraudulent, perjured, and bad faith evidence, that the instigation and continuation of the criminal proceedings were the result of improper purpose, unjustifiable motive, hostility, ill will, and malice aimed at depriving plaintiff of his constitutional rights.

The United States Supreme Court reiterated that malicious prosecution is actionable under the Fourth Amendment. Thompson v. Clark, 596 U.S. 36, 42, 142 S. Ct. 1332, 1337, 212 L.Ed.2d 382 (2022). The Supreme Court set forth the elements of a malicious prosecution claim as follows:

> A plaintiff must show that (1) the criminal proceeding was instituted without probable cause, (2) the defendant's motive in instituting the proceeding was malicious, and (3) the prosecution terminated in acquittal or discharge of the accused.

Klein v. Steinkamp, 44 F.4th 1111, 1115 (8th Cir. 2022) (*quoting* Thompson v. Clark, 596 U.S. at 44, 142 S. Ct. at 1338) (*quoting* Heck v. Humphrey, 512 U.S. 477, 484–85, 114 S. Ct. 2364, 2371–72, 129 L. Ed. 2d 383 (1994)). Plaintiff's complaint adequately sets forth a claim against the WPD defendants for malicious prosecution.

**B. Qualified Immunity.**

The WPD defendants contend they are entitled to qualified immunity as to plaintiff's malicious prosecution claim. They claim that the United States Court of Appeals for the Eighth Circuit had not recognized malicious prosecution as an established constitutional violation at the time of these defendants' investigative conduct in 2020 or 2021. However, the United States Supreme Court recognized as early as 1994 that an action lies under 42 U.S.C. § 1983 for the tort of malicious prosecution. In Heck v. Humphrey, Justice Scalia, joined by Justices Rehnquist, Kennedy, Thomas and Ginsburg, the Supreme Court held that a plaintiff may recover, under a malicious prosecution claim, "federal-court § 1983 damages for unconstitutional conviction or confinement." Heck v. Humphrey, 512 U.S. 477, 498, 114 S. Ct. 2364, 2378, 129 L. Ed. 2d 383 (1994). The fact

that such claim exists was not debated. What Heck held is that a plaintiff who is still in custody for the conviction challenged must first exhaust habeas corpus remedies as a prerequisite for relief. "A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983." Heck v. Humphrey, 512 U.S. at 487, 114 S. Ct. at 2372 (emphasis in original). Both Scalia's opinion and the concurring opinion by Justice Souter, joined by Justices Blackmun, Stevens, and O'Connor, held that a plaintiff "may seek federal-court § 1983 damages for unconstitutional conviction or confinement, but only if he has previously established the unlawfulness of his conviction or confinement, as on appeal or on habeas." *Id.*, and Heck v. Humphrey, 512 U.S. at 498, 114 S. Ct. at 2378. Plaintiffs "seeking § 1983 damages in federal court for unconstitutional conviction or confinement must satisfy a requirement analogous to the malicious-prosecution tort's favorable-termination requirement." Heck v. Humphrey, 512 U.S. at 500, 114 S. Ct. at 2379 (Justice Blackmun's concurrence).

The Supreme Court in Thompson v. Clark did not recognize a new actionable claim for malicious prosecution. The Supreme Court held that "[t]his Court's precedents recognize such a claim." Thompson v. Clark, 596 U.S. at 42, 142 S. Ct. at 1337 (*citing* Manuel v. Joliet, 580 U.S. 357, 363–364, 367–368, 137 S.Ct. 911, 197 L.Ed.2d 312 (2017); Albright v. Oliver, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (plurality opinion); *see also id.,* at 290–291, 114 S.Ct. 807 (Souter, J., concurring in judgment)).

Plaintiff alleges that the WPD defendants acted maliciously in failing to investigate the crime, collect evidence which would have been exculpatory, and such failures resulted in the provision of evidence supporting the malicious prosecution of plaintiff for that crime. The United States Court of Appeals for the Eighth Circuit rejected qualified immunity for defendants who were alleged to have engaged in "fabricating evidence, suppressing evidence, and conducting a reckless investigation" in Carnes v. Blehm, 180 F.4th 1159, 1164 (8th Cir. 2026). In Carnes v. Blehm, the Eighth Circuit held that the District Court did not err in denying summary judgment on qualified

immunity claims very similar to the claims in this case. Dismissal of plaintiff's claims at the pleading stage is premature and not warranted in this case.

**C. Failure to Investigate.**

The WPD defendants claim plaintiff's complaint fails to state a claim for failure to investigate. Defendants assert that plaintiff must establish that each individual defendant's actions in failing to investigate was intentional or reckless, shocking the conscious, citing Winslow v. Smith, 696 F.3d 716, 732 (8th Cir. 2012). Winslow v. Smith was an appeal of a district court order granting summary judgment to the defendants. The Eighth Circuit reversed the district court's grant of summary judgment on plaintiff's reckless investigation and manufacturing evidence claims. Winslow v. Smith, 696 F.3d at 740.

"To establish a constitutional violation based on an inadequate investigation, a plaintiff must show that the defendant officer's "failure to investigate was intentional or reckless, thereby shocking the conscience." Winslow v. Smith, 696 F.3d at 732 (*quoting* Cooper v. Martin, 634 F.3d 477, 481 (8th Cir.2011)). "[E]vidence that investigators purposefully ignored evidence suggesting the defendant's innocence" indicates "reckless or intentional failure to investigate that shocks the conscience." *Id.* (*quoting* Akins v. Epperly, 588 F.3d 1178, 1184 (8th Cir.2009)).

The current case is at the pleading stage. Plaintiff is only required to plead "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8((a)(2). Fed. R. Civ. P. 8(d) requires that each allegation "must be simple, concise and direct." I reject defendants' contention that plaintiff's complaint alleges mere "shoddy police work." Plaintiff set forth allegations in the complaint which rise to the level of shocking the conscious. Plaintiff is not required to prove his case at this stage of the litigation.

**D. Suppression of Evidence.** The WPD defendants contend that plaintiff's claim that the officers violated his Fourteenth Amendment right to Due Process is really a claim

for a Brady[1] violation which requires proof of intentional or bad faith failure to disclose Brady material to the prosecutor. Law enforcement officers may be liable for § 1983 damages for due process violations where they failed to disclose to the prosecution evidence favorable to the defendant but only where they did so in bad faith or with the intent to deprive the defendant of a fair trial. Villasana v. Wilhoit, 368 F.3d 976, 980 (8th Cir. 2004). Bad faith on the part of the police in preserving evidence, causing potentially exculpatory evidence to be lost, can constitute a denial of due process. Arizona v. Youngblood, 488 U.S. 51, 58, 109 S. Ct. 333, 337, 102 L. Ed. 2d 281 (1988).

Plaintiff has alleged that the WPD defendants failed to document witness statements concerning when the victim was last seen alive, that there had been someone in the victim's apartment the day before the discovery of her body (when the victim was likely already dead), and that the WPD defendants had a list of possible suspects that they neither investigated nor provided to the defense. Additionally, plaintiff alleges that the WPD defendants showed photographs of potential suspects to witnesses but testified at trial they had not done so, continuing the suppression of evidence even at trial. Plaintiff specifically alleged that defendants acted with malice in doing the forgoing, with an intent to deprive plaintiff of his constitutional rights.

Plaintiff's complaint adequately alleges a claim for deliberate and malicious violation of plaintiff's constitutional rights. Plaintiff is not required to prove anything at the pleading stage. I reject the WPD defendants' claim that plaintiff has failed to state a claim against them for suppression of evidence.

**E. Fabrication of False or Misleading Evidence.**

The WPD defendants contend that plaintiff fails to state a claim that they deliberately fabricated false and intentionally misleading evidence against the plaintiff and that such evidence was used to obtain an indictment from the grand jury and was used at trial in an attempt to obtain a conviction against plaintiff. Plaintiff claimed that, *inter alia*, the WPD defendants acted with malice to deprive plaintiff of his constitutional

---

[1] Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

rights. As set forth above, I reject defendants' assertion that plaintiff failed to state a claim as to the conduct of the WPD defendants in gathering, or failing to gather, evidence, failing to disclose such evidence to the plaintiff, and failing to provide the evidence to the prosecution (who would not have known that witness statements were never reduced to a written report).

> When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983.

Meidinger v. City of Rapid City, 2014 WL 4743513, at *22 (D.S.D. 2014) (*quoting* Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 130 (2nd Cir.1997) (internal citations omitted)).

> Like a prosecutor's knowing use of false evidence to obtain a tainted conviction, a police officer's fabrication and forwarding to prosecutors of known false evidence works an unacceptable "corruption of the truth-seeking function of the trial process."

Ricciuti v. N.Y.C. Transit Auth., 124 F.3d at 130 (*citing* United States v. Agurs, 427 U.S. 97, 104, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976); Giglio v. United States, 405 U.S. 150, 153, 92 S.Ct. 763, 765–66, 31 L.Ed.2d 104 (1972); and Mooney v. Holohan, 294 U.S. 103, 112, 55 S.Ct. 340, 341–42, 79 L.Ed. 791 (1935)).

I reject the contention that plaintiff has failed to state a claim against the WPD defendants for their alleged conduct in fabricating evidence and providing false or misleading evidence to the prosecution and the grand jury.

**F. Supervisory Liability.**

The WPD defendants assert that plaintiff has failed to state a claim for supervisory liability under 42 U.S.C. § 1983. I set forth above the law as to supervisory liability. "A supervisor may not be held liable under § 1983 for the constitutional violations of a subordinate on a respondeat superior theory. But a supervisor may be held liable if a failure to properly supervise and train an offending employee caused a deprivation of

constitutional rights." Troupe v. Young, 143 F.4th 955, 972 (8th Cir. 2025) (internal quotations and citations omitted) (cleaned up).

Plaintiff set forth in the caption of the case that plaintiff was suing "each supervisor of any current or former Watertown police officer named." Plaintiff set forth in the complaint that defendants Toomey and McPeek were law enforcement officers and had supervisory authority for the acts of WPD officers. Plaintiff also set forth that there were other WPD supervisors whose names are unknown. Plaintiff alleged that neither the Chief nor Assistant Chief of Police supervised defendant Stahl, who was alleged to have unreasonably arrested plaintiff for the murder without probable cause. Plaintiff alleges in Count Six that defendants' supervisors, unknown, are liable in their supervisory capacity for the violation of plaintiff's constitutional rights.

Plaintiffs in § 1983 actions routinely name "unknown" defendants" when the actual identity of the person who engaged in the violation of their constitutional right is not known. The identity of unknown defendants are often supplied during discovery. Plaintiff has stated claims against the WPD supervisory defendants, known and unknown, that survive defendants' motions to dismiss.

**G. Conspiracy Claims.**

The WPD defendants have moved to dismiss plaintiff's claims that they engaged in a conspiracy to violate plaintiff's Fourth, Fifth, Eighth, and Fourteenth Amendment rights.

> To prove a § 1983 conspiracy claim against a particular defendant, the plaintiff must show: that the defendant conspired with others to deprive him or her of a constitutional right; that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and that the overt act injured the plaintiff. Moreover, . . . the plaintiff is additionally required to prove a deprivation of a constitutional right or privilege in order to prevail on a § 1983 civil conspiracy claim.

Torgerson v. Roberts Cnty. of S. Dakota, 139 F.4th 638, 646 (8th Cir. 2025) (*quoting* Askew v. Millerd, 191 F.3d 953, 957 (8th Cir. 1999). Torgerson was decided upon

summary judgment. The decision is instructive as to the elements of a civil conspiracy claim.

Plaintiff set forth in detail the allegations supporting his claim that defendants engaged in a conspiracy to violate plaintiff's constitutional right to be free from unreasonable arrest, seizure, wrongful imprisonment, and malicious prosecution.

**III. Official Capacity Claims.**

The WPD defendants, the WPD supervisory defendants, and the defendants employed by the State of South Dakota moved to dismiss official capacity claims against the individual defendants. Plaintiff has conceded, at this time, that the official capacity claims against the individual defendants should be dismissed. Plaintiff requests that any such dismissal be without prejudice. The state defendants agree to a dismissal without prejudice.

The official capacity claims should be dismissed. Until final judgment, the Court can reverse any order entered in this case so it matters little whether the dismissal is with or without prejudice.

**IV. Claims Against the City of Watertown, WPD, and Unnamed WPD Supervisors.**

**A. Failure to State a Claim Against the Watertown Police Department.**

Defendant Watertown Police Department moves to dismiss the complaint against it, contending that it is not an entity subject to suit under 42 U.S.C. § 1983. A police department is not a juridical entity but simply a department of the City government not separately suable. Ketchum v. City of W. Memphis, Ark., 974 F.2d 81, 82 (8th Cir. 1992). *Accord*, Harrigan v. Osage Beach Police Dep't, 2024 WL 1928640, at *1 (8th Cir. 2024) ("The police department is a municipal sub-entity not amenable to suit."); Banley v. Dep't of Soc. Servs., 2026 WL 2804799, at *10 (D.S.D. Sept. 18, 2026) (Lange, Chief Judge) ("[I]t is well settled that municipal police departments, sheriff's offices, and jails are not generally considered persons within the meaning of 42 U.S.C. § 1983 and thus not amenable to suit."). The claims against the Watertown Police department should be dismissed.

**B. Failure to State a Claim Against the WPD Supervisors.**

I previously set forth the law as to supervisory liability under 42 U.S.C. § 1983. Plaintiff has sufficiently alleged that the WPD officers and supervisors actually violated his constitutional rights and that the WPD supervisory defendants engaged in conduct failing to comply with Arnett v. Norris. At a minimum, plaintiff has alleged that supervisory defendants implemented policies or customs giving rise to constitutional violations. Plaintiff has stated claims against the WPD supervisory defendants that survive defendants' motions to dismiss.

Plaintiff alleged there were WPD supervisory defendants(s) who were unknown and not named. Plaintiff set forth in the complaint that one of the WPD officers interviewed a witness who saw the victim alive on a date after the date defendants alleged plaintiff murdered her. The police detective disregarded the information and failed to make a report about the witness statement. Plaintiff alleged that three years later when the criminal case was ready for trial, an unnamed supervisor told the police detective to make a report about the witness statement.

The WPD supervisory defendants contend that plaintiff failed to address their motion to dismiss in plaintiff's responsive brief and thus abandoned those claims. Plaintiff filed, with the permission of the Court, an omnibus brief in opposition to the eight motions to dismiss. In that brief, plaintiff addressed the claims against supervisory defendants.

**C. Failure to State a Claim for Conspiracy.**

The WPD supervisors assert that plaintiff has failed to state a claim against them for conspiracy to violate plaintiff's constitutional rights. I previously set forth the law as to conspiracy when discussing the WPD police officer's motion to dismiss the conspiracy claim. Plaintiff set forth in detail the allegations supporting his claim that supervisory WPD defendants engaged in a conspiracy to violate plaintiff's constitutional right to be free from unreasonable arrest, seizure, wrongful imprisonment, and malicious prosecution.

**D. Claims Against the City of Watertown.**

The City of Watertown contends that it is not subject to respondeat superior liability. That is the law. However, the City is not entitled to dismissal of plaintiff's claims against it. "A plaintiff may establish municipal liability under § 1983 by proving that his or her constitutional rights were violated by an 'action pursuant to official municipal policy' or misconduct so pervasive among non-policymaking employees of the municipality 'as to constitute a "custom or usage" with the force of law.'" Ware v. Jackson County, Mo., 150 F.3d 873, 880 (8th Cir. 1998) (*quoting* Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978)).

Plaintiff set forth extensive allegations against WPD officers, who were employees of the City of Watertown. Plaintiff alleged that the City of Watertown had supervisory responsibility for the acts of the WPD defendants. Plaintiff's substantive claims against the City of Watertown, Count Five, alleges that the City of Watertown's unconstitutional policies, practices, and customs, including failure to train investigative officers, resulted in the failure of the WPD officers failure to properly interrogate, document, or retain exculpatory evidence and resulted in the suppression and destruction of evidence.

Plaintiff has adequately stated a claim which is plausible on its face for Monell liability against the City of Watertown.

**E. Conspiracy Claim Against the City of Watertown.**

The City of Watertown moves to dismiss the conspiracy claim against it, alleging plaintiff failed to show the City itself participated in the conspiracy through its own policy, custom, or action by a city official with final decision-making authority. Defendant City cites no case law from the Eighth Circuit for that proposition.

Plaintiff alleged in the complaint that the City of Watertown, by and through its employees, had in effect policies, practices and customs as to the acquisition of evidence, and the submittal of invalid or incomplete evidence used in the prosecution of the plaintiff. In Count Seven, plaintiff alleges that defendants conspired between themselves

to deprive plaintiff of his constitutional rights to, *inter alia*, be free from malicious prosecution and the violation of due process.

Defendant WPD officers and supervisors are employees of the City of Watertown. The policies of the WPD are City policies. The practices and customs of the WPD are not necessarily to practices and customs of the City. Certainly, the actions of the individual WPD defendants cannot be the basis of liability of the City only on the basis of respondeat superior. However, if the City (through its decision-making authority) was aware of a custom or practice, which was alleged by the plaintiff to have occurred and to have deprived him of a constitutional right, and the City allowed that practice to continue, the City could be held responsible. Plaintiff has specifically alleged that employees of the city acted wrongly, with malice, in the investigation of the murder, that such activities resulted in constitutional violations, and that such activities were performed as part of policies, practices, and customs of the city. Plaintiff has alleged a conspiracy sufficient to overcome the City's motion to dismiss.

**V. Claims Against the South Dakota Department of Criminal Investigation Agents and Director.**

**A. Qualified Immunity.**

The South Dakota DCI defendants contend that they are entitled to qualified immunity from damages because a cause of action for malicious prosecution did not exist in the Eighth Circuit at the time of plaintiff's arrest and prosecution. For the reasons set forth in Part II-B, above, defendants' qualified immunity claim is rejected.

**B. Eighth Amendment Claims.**

The South Dakota DCI defendants contend that plaintiff's Eighth Amendment claims arising out of malicious prosecution (Count One), entity liability claims against Codington County and the City of Watertown (Count Five), supervisory liability (Count Six), and conspiracy (Count Seven). As to Count Five, the DCI defendant are not named in that count.

The DCI defendants contend that, as a pretrial detainee, plaintiff's claims arise under the Fourteenth Amendment. Plaintiff alleges both Eighth Amendment and

Fourteenth Amendment liability as to the counts identified by defendants. Plaintiff set forth in plaintiff's omnibus brief in opposition to the motions to dismiss that plaintiff is not pursuing relief for any alleged violation of his Eighth Amendment rights.

**C. Failure to State a Claim.**

The DCI defendants contend that plaintiff has failed to state a plausible claim against the DCI defendants. That contention is without merit. The complaint sets forth specific and alleged extreme conduct by these defendants in the collection and transportation of the forensic evidence collected at the crime scene.

The DCI defendants contend that the only allegations against them is that Satterlee is the Director of the DCI and had executive and supervisory authority over the DCI agents and that each of the other defendants are law enforcement officers with the South Dakota DCI. Plaintiff sued 31 defendants. Plaintiff did not name each individual defendant in each count of the complaint. Instead, plaintiff referred to defendants in the individual counts as "defendants," "Watertown Police Department" defendants, "Division of Criminal Investigation" defendants, "forensic scientist" defendants, or "supervisory" defendants.

Defendant sets forth in in the factual allegations of the complaint that the DCI defendants were charged with collecting evidence and processing the crime scene, failed to follow policies and procedures, and failed to collect evidence which was thereafter lost. Plaintiff alleged that evidence containing bandages and tissue were packaged together in one evidence bag, that the bag was paper, that when the evidence arrived at the state crime lab one month later, the evidence was leaking through the bag, that the leaking bag was transported with another paper bag containing clothing belonging to plaintiff, that the contents of the leaking bag contained possible DNA evidence belonging to the victim. Plaintiff alleged that the DCI failed to obtain assistance of a forensic scientist at the crime scene, resulting in not collecting any DNA or fingerprints from the walls or fixtures in the victim's apartment. Plaintiff alleged that the DCI did not send the victim's clothes, or other personal objects, including objects with apparent blood stains, to the forensic laboratory for testing. Plaintiff alleges that at least one DCI agent failed to

wear gloves when collecting evidence from the crime scene. Plaintiff alleges that defendant DCI agents got the victim's bodily substances on their clothing and went to plaintiff's apartment less than ten minutes later to collect evidence – the implication being that it would have been very easy for the victim's DNA to be transferred to plaintiff's belongings. Plaintiff alleges that all of the foregoing alleged "misconduct" in the collection of evidence violated his constitutional rights in connection with the arrest, charges, and trial of the plaintiff for murder.

Plaintiff alleges in Count Six that the supervisory defendants, which would include defendant Satterlee, *inter alia* personally participated in the violation of plaintiff's constitutional rights, implemented official policies or customs that resulted in their subordinates acting with deliberate indifference to plaintiff's constitutional rights, or directed subordinates to do so. In Count Seven, plaintiff alleges that "defendants" engaged in a conspiracy to deprive plaintiff of his constitutional rights. Plaintiff adequately set forth a claim for supervisory liability against defendant Satterlee.

Similarly, in the substantive counts of the complaint, plaintiff refers to the DCI agents as a group. Plaintiff alleges that all of the foregoing conduct alleged against the DCI defendants resulted in malicious prosecution, a violation of Due Process for using unreliable, fraudulent, unreliable, fabricated, and spoiled evidence against plaintiff, suppression of exculpatory evidence, deliberate fabrication of false or misleading evidence against plaintiff, and conspiracy to deprive plaintiff of his constitutional rights. Plaintiff adequately set forth claims against the DCI individual defendants.

**D. Failure to State a Claim for Deliberate Suppression of Exculpatory Evidence.**

The DCI defendants contend that Count Three, which asserts a claim for deliberate suppression of exculpatory evidence against the WPD and DCI law enforcement officers, fails to state a claim against the DCI defendants. The basis of this assertion is that Count Three includes specific claims that the WPD defendants failed to obtain or maintain witness statements which would have been exculpatory. Plaintiff set forth in the factual claims of the complaint that the DCI agents failed to submit certain evidence for testing.

Plaintiff contends that the DCI agents failed to test cigarette butts at the crime scene until requested by plaintiff's defense team, failed to obtain fingerprint evidence from the crime scene, collected an entomology kit intended to determine the time of death but failed to submit the kit for testing, and failed to collect a saw to test it for forensic evidence.

Plaintiff set forth detailed allegations in the complaint against the DCI defendants in support of plaintiff's claim in Count Three. Plaintiff has adequately stated a claim against the DCI defendants for liability as alleged in Count III.

**VI. Claims against Codington County.**

Codington County moved to dismiss plaintiff's complaint for failure to state a claim. Plaintiff claims in the complaint that Codington County employed a State's Attorney who was responsible for the policies, practices, and customs of the State's Attorney's Office and had had supervisory authority over the employees of the State's Attorney's office However, no State's Attorney or Deputy State's Attorney is named in the complaint. No Codington County employee is named in the complaint.

I take Judicial Notice that the State of South Dakota was represented at plaintiff's state court initial appearance on September 4, 2020, arraignment on September 16, 2020, and motions hearing on November 4, 2020, by Codington County State's Attorney Rebecca Reeves and/or Deputy States Attorney Rebecca Reiter. On January 4, 2021, an Assistant Attorney General entered an appearance for the State of South Dakota. For a short time, both an Assistant States Attorney and the Attorney General's Office appeared at court hearings in plaintiff's criminal case. Plaintiff has not alleged that any prosecutor in the Codington County State's Attorney's Office engaged in any conduct. The state court criminal case record shows only that a Codington County State's Attorney or Deputy State's Attorney appeared at criminal court hearings. Any such defendant would be entitled to prosecutorial immunity for such conduct.

The complaint is devoid of any allegations against an individual Codington Count officer, agent, or employee. There is no allegation of any wrongdoing of any such officer, agent, or employee. Plaintiff has failed to state a claim against Codington County.

## VII. Claims Against the South Dakota Forensic Laboratory's Scientists and Director.

### A. Absolute Immunity.

The forensic scientist defendants move to dismiss certain claims against them based upon absolute immunity for their testimony in judicial proceedings. Plaintiff asserts in plaintiff's omnibus response that plaintiff does not seek to impose liability for the forensic scientist defendant's testimony itself, whether before the grand jury or at trial, thus conceding that no liability can attach arising out of defendants' testimony. Plaintiff states that plaintiff's claims arise only from non-immune conduct – fabrication of evidence, falsification of reports, reckless investigative acts, unconstitutional policies and other misconduct.

### B. Qualified Immunity.

The forensic scientist defendants contend that they are entitled to qualified immunity from damages because a cause of action for malicious prosecution did not exist in the Eighth Circuit at the time of plaintiff's arrest and prosecution. For the reasons set forth in Part II-B, above, defendants' qualified immunity claim is rejected.

### C. Deliberate Suppression of Exculpatory Evidence.

The forensic scientist defendants contend that Count Three, which asserts a claim for deliberate suppression of exculpatory evidence, is actually a Brady claim. These defendants contend that an investigating officer's failure to disclose exculpatory evidence does not constitute a Brady violation absent bad faith.

As set forth in Part II-D, above, law enforcement officers may be liable for § 1983 damages for due process violations where they failed to disclose to the prosecution evidence favorable to the defendant but only where they did so in bad faith or with the intent to deprive the defendant of a fair trial. Villasana v. Wilhoit, 368 F.3d 976, 980 (8th Cir. 2004). Bad faith on the part of the police in preserving evidence, causing potentially exculpatory evidence to be lost, can constitute a denial of due process. Arizona v. Youngblood, 488 U.S. 51, 58, 109 S. Ct. 333, 337, 102 L. Ed. 2d 281 (1988).

Plaintiff's complaint alleges that, when the forensic scientists eventually did test the cigarette butts found near the victim's body (at the request of plaintiff's defense team), Director Fryer refused to enter the DNA into the national CODIS database to determine possible other suspects. Eventually, the South Dakota Circuit Court ordered the South Dakota Forensic Laboratory to run a CODIS search. Plaintiff alleges that such search revealed that DNA on at least one of the cigarette butts belonged to a woman who had previously spent time in prison for solicitation of murder – attempting to hire a hit man to kill the father of her children followed by her plan to chop the body into pieces. Plaintiff alleges that the delay in running the CODIS search and in providing the result to plaintiff's defense team made it difficult for plaintiff to document the woman's location at the time of the murder. Such information could have been exculpatory to plaintiff's defense.

Plaintiff's complaint alleges that forensic defendant Specht conducted testing on a toothpaste tube and issued a knowingly false report stating that defendant's bloody thumb print was found on the tube. Plaintiff contends that the false report was used to indict plaintiff for murder. Plaintiff contends that, upon his defense counsel's inquiry for clarification of the testing used to determine the presence of blood, defendant Kirkpatrick intentionally hid from counsel the names of the testing methods used, hiding the reliability of the tests and the report.

Plaintiff set forth detailed allegations in the complaint against the forensic scientist defendants in support of plaintiff's claim in Count Three. Plaintiff has adequately stated a claim against these defendants for liability as alleged in Count III.

Now, therefore,

IT IS ORDERED:

1. Defendants Jackley and Vargo's motion, Doc. 29, to dismiss is denied.

2. Defendants Watertown Police Department police officers' motion, Doc. 31, to dismiss is granted, in part. The official capacity claims against the individual Watertown Police Department police officers are dismissed. In all other respects, the motion is denied.

3. The State of South Dakota individual defendants' motion, Doc. 31, to dismiss official capacity claims is granted.

4. The Watertown Police Department, Unnamed Watertown Police Department Supervisors, and the City of Watertown's motion, Doc. 34, is granted, in part. The claims against the Watertown Police Department are dismissed. The Official capacity claims against the Watertown Police Department Supervisors are dismissed. The motion to dismiss claims against the City of Watertown are denied.

5. The defendants employed by the South Dakota Department of Criminal Investigation motion, Doc. 37, are granted, in part. Plaintiff's Eighth Amendment claims against defendants are dismissed. In all other respects, the motion to dismiss claims against the South Dakota Department of Criminal Investigation defendants is denied.

6. Defendant Codington County's motion, Doc. 39, to dismiss is granted.

7. Defendant Ravnsborg's motion, Doc. 41, to dismiss is denied.

8. The motion of the defendants employed by the South Dakota Forensic Laboratory, Doc. 43, to dismiss is denied.

DATED this 29th day of September, 2026.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge